2003 ME 21

**DARLING'S**

v.

**FORD MOTOR COMPANY.**

Supreme Judicial Court of Maine.

Argued: Sept. 11, 2002.

Decided: Feb. 25, 2003.

Revised June 10, 2003.

Judy A.S. Metcalf (orally), Eaton Peabody, Brunswick, for plaintiff.

James T. Kilbreth, Daniel L. Rosenthal (orally), Verrill & Dana, LLP, Portland, for defendant.

John H. Fleming, Carla W. McMillian, Atlanta, GA, Sutherland, Asbill & Brennan, LLP, amici curiae.

Bruce T. Gerrity, Roy T. Pierce, Preti Flaherty; Beliveau Pachios & Haley, LLC, Portland, for Maine Automobile Dealers Ass'n, amicus curiae.

Harold T. Friedman, Humphrey H.N. Johnson, Friedman Gaythwaite Wolf & Leavitt, LLP, Portland, for Alliance of Automobile Manufacturers.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Darling's, an automobile dealer/franchisee, appeals from a summary judgment entered in the Superior Court (Penobscot County, *Hjelm, J.*) in favor of Ford Motor Co., an automobile manufacturer/franchisor. Darling's complaint seeks to recoup warranty repair reimbursement claims that Ford had previously approved and paid, but charged back to Darling's after conducting an audit. Darling's also seeks to permanently enjoin Ford from such action in the future. Darling's contends that the court erred when it construed 10 M.R.S.A. § 1176–A (Supp. 2002) as authorizing audits of warranty claims after the thirty-day deadline for warranty claim approval imposed by 10 M.R.S.A. § 1176 (1997 & Supp.2002). Because we conclude that section 1176–A authorizes only the audit of paid claims and charge-backs for customer or dealer incentives, but not the audit of warranty claims, we vacate the judgment and remand for entry of a partial summary judgment in favor of Darling's and for further proceedings.

## I. BACKGROUND

[¶ 2] As part of the parties' dealership franchise agreement, Darling's must provide Ford automobile owners with free warranty repairs. Ford later reimburses Darling's for these repairs. To be reimbursed, Darling's submits warranty repair reimbursement claims to Ford pursuant to 10 M.R.S.A. § 1176, which requires Ford to review and either approve or disapprove a claim within thirty days. If Ford approves the claims, it has another thirty days to make payment to Darling's.

[¶ 3] In the present case, Ford approved and paid Darling's warranty claims within the time period mandated by section 1176. Later, after the expiration of the thirty day deadline, Ford audited these claims and charged back to Darling's those it determined were improper. Darling's subsequently brought this suit against Ford in order to recoup these charge-backs and to permanently enjoin Ford from engaging in future audits and charge-backs beyond section 1176's deadline. On cross-motions for a summary judgment, the Superior Court entered a summary judgment for Ford, concluding that section 1176–A authorizes Ford to audit and charge back improper warranty claims it had initially approved and paid pursuant to section 1176. This appeal followed.

## II. DISCUSSION

[¶ 4] A summary judgment is warranted when the statement of material facts and the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, cited in the statement of material facts establish that there is no genuine issue of material fact and that a party is entitled to a judgment as a matter of law. M.R. Civ. P. 56(c), (h). We review a summary judgment for errors of law, independently examining the parties' statements of material facts to determine the existence of genuine issues of material fact. *White v. McTeague, Higbee, Case, Cohen, Whitney & Toker, P.A.*, 2002 ME 160, ¶ 6, 809 A.2d 622, 623.

[¶ 5] Resolution of this case turns solely on the proper interpretation of sections 1176 and 1176–A. Section 1176 entitled "Warranty" provides in pertinent part as follows:

Any claim made by a franchisee for compensation for parts provided or for reimbursement for labor performed in satisfaction of a warranty must be paid within 30 days of its approval. All the claims must be either approved or disapproved within 30 days of their receipt.

10 M.R.S.A. § 1176. Section 1176–A entitled "Audits" provides in its entirety as follows:

A manufacturer may reasonably and periodically audit a new motor vehicle dealer to determine the validity of paid claims or any charge-backs for customer or dealer incentives. Audits of incentive payments may be only for the 18–month period immediately preceding the date notifying the dealer that an audit is to be conducted.

10 M.R.S.A. § 1176–A.

[¶ 6] Darling's contends that section 1176–A only authorizes audits for paid claims and charge-backs that involve "customer or dealer incentives," and that section 1176–A is inapplicable to warranty claims, which are governed solely by section 1176. Ford responds that section 1176–A authorizes audits of paid claims and charge-backs of both "customer or dealer incentives" and warranty claims because its use of the phrase "paid claims" in the first sentence implicitly refers to warranty "claims" that are otherwise the subject of section 1176.[1] The Superior Court determined that the plain meaning of "paid claims" in section 1176–A includes warranty "claims" addressed in section 1176 as suggested by the juxtaposition of the two statutes.

[¶ 7] Statutory interpretation is a question of law that we review de novo. McKeeman v. Cianbro Corp., 2002 ME 144, ¶ 7, 804 A.2d 406, 408. In separate litigation involving these same parties, we explained that "we seek to give effect to the intent of the Legislature by examining the plain meaning of the statutory language and considering the language in the context of the whole statutory scheme. We avoid statutory constructions that create absurd, illogical or inconsistent results." Darling's v. Ford Motor Co., 1998 ME 232, ¶ 5, 719 A.2d 111, 114 (internal citations omitted). Though we consider the language of a particular section of a statute in the context of the whole statutory scheme, we will not apply other sections to create doubt when the meaning of any phrase or section is clear standing alone. See Ballard v. Edgar, 268 A.2d 884, 887–88 (Me.1970) (holding that "the clear, unambiguous wording" of a new section controls where the Legislature obviously intended the new section to stand alone and without regard to other sections); see also NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 47:02 (6th ed., rev.2000). We first examine a statute's plain meaning, and only "look beyond that language to the legislative history to determine the intent of the Legislature" if we find the statute ambiguous. Acadia Motors, Inc. v. Ford Motor Co., 2002 ME 102, ¶ 10, 799 A.2d 1228, 1231 (quoting Great N. Paper, Inc. v. Penobscot Nation, 2001 ME 68, ¶ 15, 770 A.2d 574, 580) (internal quotation marks omitted).

[¶ 8] Applying these principles of statutory construction, we conclude that section 1176–A authorizes audits of paid claims and charge-backs that involve customer or dealer incentives, but not warranty claims. The first sentence of section 1176–A contains two prepositional phrases. The phrase "of paid claims or any charge-backs" modifies "validity." The second

---

**1.** Before the Superior Court, Ford asserted that it was entitled to conduct audits pursuant not only to Maine Law, but also to the parties' franchise agreement. The Superior Court did not address this assertion in ruling on the summary judgment motions because "Ford made no record reference to any portion of the agreement, and this part of its response is therefore insufficient." Ford has not challenged this determination on appeal. Accordingly, we do not address whether Ford has the right to perform audits on any basis independent of section 1176–A.

phrase "for customer or dealer incentives" modifies the first phrase, "paid claims or any charge-backs." By its plain language, section 1176-A's first sentence establishes that audits of the paid claims or charge-backs related to customer or dealer incentives can "reasonably and periodically" occur, while the second sentence establishes that the time period for any single audit of incentive payments is limited to the previous eighteen months.

[¶ 9] Ford's contention that the first sentence of section 1176-A authorizes audits of not only incentive charge-backs and payments, but also of warranty charge-backs and payments, is unpersuasive. It would follow from Ford's construction that the first sentence of section 1176-A applies to both incentive and warranty payments, but that the specific eighteen month period for audits established in the second sentence only applies to incentive payments. We will not construe a statute so as to create an internal inconsistency where one does not otherwise exist. These sentences only become inconsistent if one attempts to read the word "warranty" into the first sentence of section 1176-A. Such an effort is, however, contrary to the section's plain language.

[¶ 10] The Superior Court construed the term "paid claims" in section 1176-A as standing alone, not being modified, and as including all claims paid pursuant to warranty reimbursement under section 1176. Because this construction of the statutory language is not unreasonable given the juxtaposition of sections 1176 and 1176-A, the statute is reasonably susceptible of different interpretations, and accordingly, is ambiguous. *See Mundy v. Simmons,* 424 A.2d 135, 137 (Me.1980). We therefore look to the statutory history to aid in our interpretation. *Id.*

[¶ 11] The legislative history shows: (1) when the bill that resulted in section 1176-

A was presented to the Legislature in its original form, it provided that warranty claims were to be included in those claims that were subject to audit, *see* L.D. 1747 (118th Legis.1997); (2) the enacted version did not include the language "warranty claim"; and (3) the summary accompanying the Committee amendment that amended language of the enacted bill, states that section 1176-A, the section authorizing audits, "does not address warranty reimbursement of parts and labor in the Maine Revised Statutes, Title 10, Section 1176." Comm. Amend. A to L.D. 1747, No. S-330 (118th Legis.1997) (Summary ¶ 19). This history reflects that the Legislature did not intend to make the audit provisions of section 1176-A applicable to the warranty provisions of section 1176.

[¶ 12] In the context of the greater statutory scheme, section 1176 addresses dealer warranty claims while section 1176-A addresses customer or dealer incentives. The juxtaposition of these statutory provisions does not compel a contrary conclusion because they each address different aspects of the motor vehicle dealer/manufacturer relationship. They are but two out of twenty-four sections of Title 10, chapter 204 (10 M.R.S.A. §§ 1171-1186 (1997 & Supp.2002)), most of which address separate and discrete facets of the business practices of motor vehicle manufacturers, distributors, and dealers.

[¶ 13] Because section 1176-A's audit provision only applies to customer or dealer incentives and does not apply to the warranty claims that were the subject of Ford's audits of payments previously made to Darling's, the Superior Court erred in granting a summary judgment in favor of Ford. Accordingly, we vacate the judgment and remand for entry of a partial summary judgment in favor of Darling's relative to section 1176-A, and for further proceedings to determine whether Dar-

ling's is entitled to relief pursuant to section 1173.

[¶ 14] We do not address Ford's remaining arguments on appeal, which we find to be without merit.

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.